**[Cite as *State v. Sears*, 2023-Ohio-1925.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                                   Court of Appeals No.  OT-22-048

　　　Appellee                                               Trial Court No.  21 CR 236

v.

Jason Sears                                                  **<u>DECISION AND JUDGMENT</u>**

　　　Appellant                                              Decided:  June 9, 2023

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney and
Thomas A. Matuszak, Assistant Prosecuting Attorney, for appellee.

W. Alex Smith, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Jason Sears, appeals the August 4, 2022 judgment of the Ottawa County Court of Common Pleas, convicting him of aggravated possession of drugs and sentencing him to 36 months in prison.  For the reasons that follow, we reverse the trial court judgment.

## I. Background

{¶ 2} Jason Sears was indicted on three counts: (1) aggravated trafficking in drugs, a violation of R.C. 2925.03(A)(2) and (C)(1)(c), a third-degree felony (Count 1); (2) aggravated possession of drugs, a violation of R.C. 2925.11(A) and (C)(1)(b), a third-degree felony (Count 2); and (3) possession of heroin, a violation of R.C. 2925.11(A) and (C)(6)(a), a fifth-degree felony (Count 3). Sears entered a plea of guilty to Count 2 and the remaining counts were dismissed. The trial court found that Sears was not amenable to community control and sentenced him to a prison term of 36 months. Sears's conviction and sentence were memorialized in a judgment entered on August 4, 2022. Sears appealed. He assigns one error for our review:

> The Court erred by imposing a sentence contrary to law.

## II. Law and Analysis

{¶ 3} In his sole assignment of error, Sears argues that his sentence is contrary to law because in fashioning his sentence, the trial judge considered information outside of R.C. 2929.19(B)(1)(a). Specifically, Sears complains that the judge considered and relied upon input from the Adult Parole Authority ("APA") and the Sandusky County Probation Department and did not limit its consideration to the record, the presentence investigation report, victim impact statements, and information presented in person at the sentencing hearing. He claims that the trial judge compounded this error by failing to inform him of what information he received from the APA and Sandusky County, and by proceeding to

2.

sentence him without allowing him to respond to the information they provided. Sears maintains that the court violated his Crim.R. 32(A)(1) right of allocution.

{¶ 4} We review a challenge to a felony sentence under R.C. 2953.08(G)(2). R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify a sentence or may vacate the sentence and remand the matter to the sentencing court for resentencing if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 5} Sears does not complain that his sentence violated R.C. 2953.08(G)(2)(a); he argues that his sentence was "otherwise contrary to law" under R.C. 2953.08(G)(2)(b). The Ohio Supreme Court has explained that a sentence is "otherwise contrary to law" if it is "in violation of statute or legal regulations at a given time." (Internal quotations omitted.) *State v. Bryant*, Slip Opinion No. 2022-Ohio-1878, ¶ 22, quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990).

{¶ 6} Here, Sears argues that his sentence was contrary to law for two reasons: (1) the trial judge considered information outside what he was permitted to consider under R.C. 2929.19(B)(1)(a); and (2) he violated his right of allocution under Crim.R. 32(A)(1)

3.

by failing to allow him to address new information before imposing his sentence. We begin by addressing R.C. 2929.19(B)(1)(a).

{¶ 7} Under R.C. 2929.19(B)(1)(a), when sentencing an offender, a trial court must consider the following information at the sentencing hearing: (1) the record; (2) any information presented at the hearing by the offender, the prosecuting attorney, the victim or the victim's representative, and any other person approved by the trial court; (3) the presentence investigation report; and (4) any victim impact statement. In *State v. Fowler,* 6th Dist. Ottawa No. OT-21-031, 2022-Ohio-3499, ¶ 15, we recognized that a sentence may be "contrary to law" where the trial court relies on information from a source outside of those authorized by R.C. 2929.19(B)(1)(a). Other Ohio courts have explained that "[w]hatever the court considers for sentencing should be either part of the presentence investigation or 'presented' at the sentencing hearing before allocution." *State v. Yates,* 195 Ohio App.3d 33, 2011-Ohio-3619, 958 N.E.2d 640, ¶ 25 (2d Dist.); *State v. Light,* 11th Dist. Ashtabula No. 2022-A-0055, 2023-Ohio-1187, ¶ 24 (11th Dist.).

{¶ 8} At the sentencing hearing, the trial judge indicated that he had considered the PSI submitted by the Ottawa County Probation Department, but he also revealed that the probation department had communicated with the APA and had spoken with the probation department in Sandusky County, where Sears was facing other criminal charges. The court told Sears that Sandusky County, the APA, and the Ottawa County probation department all agreed that he is not amenable to community control. "So," the

4.

court told Sears, "I will find that you're not amenable to community control." It immediately proceeded to sentence Sears.

{¶ 9} The PSI is part of the record on appeal here, as is the transcript of the sentencing hearing. No one spoke at the hearing concerning any conversation with Sandusky County or the APA, and the PSI does not document any such conversations. The state appears to concede that there is no writing reflecting either the judge's conversation with the probation officer or the probation officer's conversations with Sandusky County or the APA. It argues instead that "[n]othing in R.C. 2929.19(A) requires that information presented by any other person that is relevant to the imposition of sentence must be presented **in writing prior to sentencing.**" (Emphasis in original.) It insists that "a trial court must be permitted to communicate verbally with its own Adult Probation Department; otherwise, the dilatory drudge of reducing all communications to writing would frustrate effective communications between a trial court and its own Adult Probation Department."

{¶ 10} R.C. 2929.19(A) says that a trial court shall hold a sentencing hearing at which "the offender, the prosecuting attorney, the victim or the victim's representative * * *, and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case." R.C. 2929.19(B)(1)(a) further states that "[a]t the sentencing hearing, the court, before imposing sentence, shall * * * [c]onsider *the record*, any *information presented at the hearing* by any person pursuant to division (A) of this section, and, if one was prepared, *the presentence investigation report*

made pursuant to section 2951.03 of the Revised Code or Criminal Rule 32.2, and any *victim impact statement* made pursuant to section 2947.051 of the Revised Code." (Emphasis added.)

{¶ 11} R.C. 2929.19(A) and (B)(1)(a) are clear and unambiguous, therefore, we must assume that they mean what they say. *See Hakim v. Kosydar*, 49 Ohio St.2d 161, 164, 359 N.E.2d 1371 (1977), citing *Chope v. Collins*, 48 Ohio St.2d 297, 300, 358 N.E.2d 573, fn. 2 (1976) ("An unambiguous statute means what it says."). By their plain language, R.C. 2929.19(A) and (B)(1)(a) do not permit a trial judge who is sentencing a defendant to rely on oral statements that are not presented in court or otherwise included in the record or PSI. *See also State v. Hale,* 2014-Ohio-262, 7 N.E.3d 643, ¶ 30 (3d Dist.) (Rogers, J., concurring) ("[T]he trial court must only consider what is properly on the record at sentencing, and cannot rely on information outside of the record."). Accordingly, we are forced to conclude that the trial court violated R.C. 2929.19(B)(1)(a) when it imposed a sentence after considering information of the type not enumerated in the statute.

{¶ 12} The dissent contends that the oral communication the trial judge received from the probation department introduced "nothing intrinsically new," was not a "surprise" to Sears, and "was presented by the trial court itself at sentencing." It characterizes our application of the plain language of the statute as producing an "absurd and unnecessary" result.

6.

**{¶ 13}** First, the Ohio Supreme Court cautioned (in the same case cited by the dissent), that "all courts should exercise restraint in the application of the absurd-result exception [to the plain-meaning rule of construction], employing it in only those cases in which the plain language of a statute results in an obviously unintended result." *State ex rel. Clay v. Cuyahoga Cnty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 26, citing Scalia & Garner, *Reading Law*: *The Interpretation of Legal Texts* 239 (2012). Applying the plain language of R.C. 2929.19(B) to limit the court's consideration to information contained in the record, presented at the hearing by certain enumerated witnesses, or included in the written PSI does not lead to "an obviously unintended result."

**{¶ 14}** Second, R.C. 2919.19A(A) does not list the trial judge among the people who can present information at the hearing. It lists (1) the offender, (2) the prosecuting attorney, (3) the victim or the victim's representative, and (4) "with the approval of the court, any other person." *Id.* It would be absurd to interpret "with the approval of the court, any other person" to include the trial judge himself when the legislature could just have easily specified the trial judge among the people authorized to present information at sentencing. Moreover, it is not implied anywhere that the trial judge may act as the mouthpiece for the probation department. To the contrary, R.C. 2951.03(A) explicitly requires the probation officer to generate "a *written* presentence investigation report" reflecting the results of his or her investigation; there is no provision permitting just an oral, off-the-record report. And despite the suggestion in the dissent to the contrary, there

7.

is no exception permitting the trial court to consider information not specified in R.C. 2919.19(B) so long as it is "not intrinsically new" or is not a "surprise."

{¶ 15} Turning to Crim.R. 32(A)(1), "[a]t the time of imposing sentence, the court shall * * * [a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."

{¶ 16} Sears complains here that the trial court referenced information previously not disclosed to him, then immediately proceeded to sentencing without providing him the opportunity to address this new information. The state does not directly dispute this contention. Rather, it argues that "it would be incongruous for this court to tell the trial court and its own Adult Probation Department that they collectively satisfied their statutory obligations but nonetheless violated the Appellant's right of allocution because they satisfied their statutory obligations." The state's response ignores the fact that it is possible (and expected) that the court and probation department can (and usually do) satisfy their statutory obligations without violating a defendant's right of allocution. All a court must do to avoid violating the right of allocution is to provide an opportunity for the defendant to address all information offered against him before imposing a sentence.

{¶ 17} In *Yates*, 195 Ohio App.3d 33, 2011-Ohio-3619, 958 N.E.2d 640, for example, the trial court informed Yates that it had a report from his bail bondsperson indicating that Yates had been transporting drugs interstate while out on bond. After the court told Yates about the information received from the bondsperson, Yates raised his

8.

hand, requesting to speak. The trial court cut him off, allowed no more discussion, then sentenced him to five years' imprisonment. On appeal, Yates argued, among other things, that the trial court violated his right of allocution. The Second District Court of Appeals agreed.

{¶ 18} The court recognized that the "'Crim.R. 32 inquiry * * * represents a defendant's last opportunity to plead his case or express remorse.'" *Id.* at ¶ 19, quoting *State v. Green*, 90 Ohio St.3d 352, 359-360, 738 N.E.2d 1208 (2000). It observed that a defendant's right of allocution is fulfilled "when the court's conduct clearly shows the defendant and his counsel that each has a right to make a statement before sentence is imposed." *Id.,* citing *Defiance v. Cannon*, 70 Ohio App.3d 821, 828, 592 N.E.2d 884 (3d Dist.1990). The court explained that "[a] trial court errs when it does not let the defendant address new information introduced and considered by the trial court at sentencing," and such "error is presumed prejudicial because the defendant is prevented from speaking at the appropriate time." *Id.* at ¶ 21.

{¶ 19} The court emphasized that although the trial judge let Yates and his counsel speak at the beginning of the sentencing hearing, he did not let Yates speak again between discussing the bondsperson's report and imposing the sentence. It found that the report constituted new information, and it was unknown whether defense counsel had been made aware of the report before the hearing. Moreover, it was unclear whether the trial judge had relied on the report in imposing the sentence. The court, therefore, reversed and remanded for resentencing. It clarified that on remand, the trial court should

9.

determine whether it considered the bond report for purposes of sentencing. *Id.* at ¶ 26. It instructed that "[i]If the bond report was considered for sentencing, then the trial court should determine whether Yates or his counsel was apprised of the bond-report information before their opportunity for allocution"; "[i]f not, then Yates should be given an opportunity to respond to the bond-report information before he is resentenced."

{¶ 20} Finally, the court was concerned that the report of the bail bondsperson was not part of the record on appeal. It cautioned that "[i]n reviewing the propriety of a trial court's sentencing decision, an appellate court must have before it the evidence and other information upon which the trial court relied in making its sentencing decision." The court held that "if the trial court wishes to take the report of the bail bondsperson into consideration in determining a proper sentence, it should append it to, and preserve it with, the presentence-investigation report." *Id.* at ¶ 27.

{¶ 21} Similarly, in *Fowler*, 6th Dist. Ottawa No. OT-21-031, 2022-Ohio-3499, involving an aggravated-vehicular homicide conviction that arose from a motorcycle accident, the trial judge informed Fowler that he lives very close to the site of the accident, and his wife had told him "that she could hear [the] motorcycle leaving town and knew by the pitch of the engine and how quickly it was moving up the road that there would be an accident." *Id.* at ¶ 9. The court told Fowler that his wife "knew that from a half a mile, a mile away, so it was predictable not only, it was probable" that an accident would occur. *Id.* After saying this, the trial judge did not give Fowler or his attorney an opportunity to respond to this information before announcing his sentence.

10.

{¶ 22} We found, first, that the trial court erred by considering information other than that permitted by R.C. 2929.19(B)(1)(a). And, like the *Yates* court, we also found that the trial judge violated the defendant's right of allocution by not allowing him to respond to the new information that he obtained from his wife. We observed that "[w]hen the court (as opposed to the state or a third party) introduces the new information, there is a higher likelihood that the court actually considered the new information in arriving at its sentence, and, consequently, a higher likelihood of prejudice to the defendant." *Fowler* at ¶ 17.

{¶ 23} Here, as in *Yates* and *Fowler*, the trial judge did not allow Sears an opportunity to respond to the new information before proceeding to sentence him. Sears's Crim.R. 32(A)(1) right of allocution was, therefore, violated.

{¶ 24} Having found that the trial court violated R.C. 2929.19(B)(1)(a) and Crim.R. 32(A)(1), we must next determine whether these errors constitute reversible error. The state emphasizes that Sears did not object when the trial court disclosed that it had information that had come from Sandusky County and the APA. It maintains, therefore, that this court should employ a plain-error standard of review under Crim.R. 52 and find that the lower court did not commit plain error. It argues secondarily that if we find that the trial court committed error, we should find that any such error was harmless.

{¶ 25} Harmless error is "[a]ny error, defect, irregularity, or variance which does not affect substantial rights * * *." Crim.R. 52(A). Plain error is error that affects substantial rights. Crim.R. 52(B). An "error that affects substantial rights" is one that

11.

affects the outcome. *State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. To show that an error affected substantial rights, the defendant must demonstrate that there was a "reasonable *probability* that the error resulted in prejudice." (Emphasis in original.) *Id.*

{¶ 26} Ohio courts have recognized that when a trial court imposes a sentence that is contrary to law, the sentencing errors affect the defendant's substantial rights. *State v. Masciarelli,* 7th Dist. Belmont No. 15 BE 0016, 2017-Ohio-170, ¶ 26; *State v. Walters,* 4th Dist. Adams No. 15CA1009, 2016-Ohio-5783, ¶ 25. But more specific to this case, courts have found prejudice where these particular errors—violations of R.C. 2929.19(B)(1)(a) and Crim.R. 32(A)(1)—occurred.

{¶ 27} In *Fowler*, we found that because the trial judge's comments demonstrated that he took new, outside information into consideration and relied on it when deciding on a sentence, the error was not harmless. *See Fowler* at ¶ 18. Additionally, the *Yates* court explained that when a trial court does not allow the defendant to address new information introduced and considered by the trial court at sentencing, "error is presumed prejudicial because the defendant is prevented from speaking at the appropriate time." *Yates* at ¶ 21. We emphasized in *Fowler* that when it is the court—as opposed to the state or a third party—that introduces the new information, "there is a higher likelihood that the court actually considered the new information in arriving at its sentence, and, consequently, a higher likelihood of prejudice to the defendant." *Fowler* at ¶ 17. *See also Light,* 11th Dist. Ashtabula No. 2022-A-0055, 2023-Ohio-1187, at ¶ 27-28 (finding

12.

that despite his failure to object, defendant suffered prejudice when court relied on "new information" that was "not otherwise part of the record," then proceeded to sentencing without allowing defendant to respond); *State v. Castle,* 4th Dist. Lawrence No. 03CA24, 2004-Ohio-1992, ¶ 9 ("The failure to grant allocation is not harmless error when a defendant is denied the opportunity to address evidence introduced and considered by the trial court at sentencing.").

{¶ 28} Here, there is no question that the trial court considered and relied on information that was not contained in the record, presented at the sentencing hearing, or included in the PSI. There is also no question that this information was relayed without giving Sears an opportunity to respond. Specifically, the court said that Sandusky County, the APA, and the Ottawa County probation department all agreed that he is not amenable to community control. "*So,*" the court told Sears, "*I will find that you're not amenable to community control.*" (Emphasis added.) Because it is clear that the court relied on information outside R.C. 2929.19(B)(1)(a) that was not presented at the sentencing hearing before allocution, in violation of Crim.R. 32(A)(1), we conclude that Sears's sentence was contrary to law and the trial court's errors were not harmless.

{¶ 29} The dissent contends that any error here was harmless because there is no suggestion that Sears was taken by surprise by information coming from the APA or the Sandusky County probation department. But that puts this court in the position of deeming what is or is not surprising to a person being sentenced. If the information was properly offered before allocution—i.e., because it was (1) contained in the record; (2)

13.

presented at the hearing by the offender, the prosecuting attorney, the victim or the victim's representative, and any other person approved by the trial court before allocution; (3) included in the presentence investigation report; or (4) referenced in any victim impact statement and presented before allocution—we would not be forced to make such an assessment. But it was not, and according to Ohio case law, we presume Sears was prejudiced.

{¶ 30} We find Sears's sole assignment of error well-taken.

### III. Conclusion

{¶ 31} The trial judge considered and relied on information of a type not enumerated in R.C. 2929.19(B)(1)(a), which it introduced without providing Sears an opportunity to respond, also violating his right of allocution under Crim.R. 32(A)(1). These errors were not harmless. As such, Sears's sentence was contrary to law. We find his sole assignment of error well-taken, reverse the August 4, 2022 judgment of the Ottawa County Court of Common Pleas, and remand to the trial court for resentencing. The state is ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.                                              _____
                                                                 JUDGE

Charles E. Sulek, J.          
CONCUR.                                             _____
                                                                  JUDGE


Myron C. Duhart, P.J.
DISSENTS AND WRITES
SEPARATELY.

**DUHART, P.J., dissenting.**

**{¶ 32}** I disagree with the majority's conclusion that a sentencing judge may not rely on previously disclosed oral communications from the judge's own probation department, especially where, as here, the communication has introduced nothing intrinsically new to the sentencing calculation.

**{¶ 33}** In the instant case, the trial court, addressing Sears' amenability to community control, stated simply:

I've certainly considered the Presentence Report that I received from the

[Ottawa County] Probation Department who attempted to do the most

thorough job they could without your participation in at least parts of it. They have spoken with Sandusky County and with, they've had communication with the Adult Parole Authority, all of whom it is their opinion that you're not amenable to community control. And it is the opinion of [the Ottawa County] Probation Department that, again, you're not amenable to community control. So I will find that you are not amenable to community control.

{¶ 34} With this statement, the trial court merely disclosed that it had considered both the recommendation of its own probation department, over whose work the trial court has supervisory power, and the reasons and underlying support for that recommendation. *See* R.C. 2301.27(A)(1)(a) (providing that the court shall supervise the work of its probation officers).

{¶ 35} The majority's interpretation of R.C. 2929.19(A) and (B)(1)(a) renders unlawful the trial court's objectively reasonable action in this case. "'[I]t is the duty of the courts, if the language of a statute fairly permits * * * so to construe the statute as to avoid [an unreasonable or absurd] result.'" *State ex rel. Clay v. Cuyahoga County Medical Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.Ed.3d 498, ¶ 24, citing *State ex rel. Cooper v. Savord*, 153 Ohio St.367, 92 N.E.2d 390 (1950), paragraph one of the syllabus. In my opinion, the majority's interpretation of R.C. 2929.19(A) and (B)(1)(a) yields an absurd and unnecessary result in that it prevents a trial judge from relying on communications from his or her own probation department.

16.

**{¶ 36}** As indicated above, R.C. 2929.19(A) provides that a trial court shall hold a sentencing hearing at which "the offender, the prosecuting attorney, the victim or the victim's representative * * * and, with the approval of the court, *any other person may present information* relevant to the imposition of sentence in this case." And R.C. 2929.19(B)(1) states that "[a]t the sentencing hearing the court, before imposing sentence, *shall * * * [c]onsider* the record," including "*any information presented at the hearing by any person pursuant to division (A) of this section*." Although the statute does not specify trial judges among the people authorized to present information at sentencing, it also makes no exclusions for them. To the contrary, it allows *any* person having the court's approval to present information relevant to the imposition of sentence.

**{¶ 37}** I reject the majority's suggestion that this interpretation of the law would render a trial judge a "mouthpiece" for the probation department. Instead, it would permit a trial court to consider and to put on the record relevant information that had already been relayed to it by that department.

**{¶ 38}** By contrast, the majority's interpretation of the law, when taken to its logical conclusion, would compel the absurd result that a trial court would have to disregard oral communications received from the very probation department over whose work the trial court has supervisory authority. *See* R.C. 2301.(A)(1)(a) (providing that the trial court shall supervise the work of its probation department).

**{¶ 39}** For all of the foregoing reasons, I would find that the trial court lawfully considered information concerning Sears' amenability to community control that was

obtained through the trial court's own probation department and, thereafter, was presented by the trial court itself at sentencing. In this way, the trial court's action is easily and fairly viewed as conforming with the plain language of the applicable statutes.

{¶ 40} Regarding the alleged violation of Crim.R. 32(A)(1), Sear's right of allocution, I would note that at the time of sentencing in this case, Sears was on parole and was actively involved with the Sandusky County probation department. Any suggestion that he was taken by surprise by information coming from the APA or the Sandusky County probation department concerning his amenability to community control defies credibility. In this way, Sears' case is materially distinguishable from *Fowler*, where the trial judge's wife was the source of new and outside information that was relied upon by the trial court but could not have been known by the defendant to exist. Sears' case is also distinguishable from *Yates*, where the trial judge prevented the defendant from speaking after the defendant had raised his hand, indicating his desire to do so. In the instant case, Sears, upon hearing of the recommendations of the other correctional authorities, made absolutely no attempt to challenge or to otherwise address them. Nor did his counsel make any attempt to object. Under the circumstances, I, unlike the majority, would find that any violation of Crim.R. 32(A)(1) was, at most, harmless error.

{¶ 41} In sum, because the trial court in this case candidly disclosed that it had relied upon a relevant and proper communication from its probation department, and because the communication in question addressed nothing intrinsically new or surprising

to the defendant that would result in any unfair prejudice, I respectfully dissent and would affirm the judgment of the trial court.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.