[Cite as *State v. Collier*, 2025-Ohio-2492.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Kevin W. Popham, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| DONOVAN EDWARD COLLIER | : | Case No. 2024 CA 00161 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas of Stark County, Case No. 2024 CR 1226


JUDGMENT:      Reversed and Remanded


DATE OF JUDGMENT:      July 14, 2025


APPEARANCES:

For Defendant-Appellant

George Urban
116 Cleveland Ave. N.W., Suite 808
Canton, Ohio 44702

For Plaintiff-Appellee

Kyle L. Stone
Stark County Prosecuting Attorney
Elizabeth A. Nemes
Assistant Prosecuting Attorney
110 Central Plaza South, Suite 510
Canton, Ohio 44702-1413

*Gormley, J.*

**{¶1}** Defendant Donovan Collier appeals the sentence imposed on him in Stark County, where he pled guilty to several criminal charges. Collier argues that the trial judge was vindictive at the sentencing hearing, failed to consider his ability to pay when setting the amount of restitution owed, and denied him the right to address new evidence presented by the prosecution at the sentencing hearing. We focus today on the last of those issues and find that the trial court improperly denied Collier an opportunity to speak after the prosecution provided the court with some material information and photos at the sentencing hearing. We therefore reverse the judgment of the trial court and remand the case for a new sentencing hearing.

## Facts and Procedural History

**{¶2}** In May 2024, Collier was involved in an altercation with a person he had formerly lived with. Collier caused damage to that victim's vehicle by ramming his vehicle into hers. Collier also struck the victim and stole her phone.

**{¶3}** One day before a trial in the case was scheduled to start, the state received a video recording from the victim that bolstered the state's case against Collier. The state shared that new evidence with Collier's counsel that same evening. The prosecutor assigned to the case told defense counsel that because of the late disclosure, the state would not attempt to present the recording during the government's case in chief at the trial. The prosecutor did, however, communicate to Collier's counsel that the state might show the video as rebuttal evidence if Collier claimed during the trial that he had not assaulted the victim.

{¶4} After defense counsel told Collier about the video recording and its possible use as rebuttal evidence, Collier decided to plead guilty.

{¶5} The trial court — still under the impression that Collier wanted a jury trial — told potential jurors to appear at the courthouse for the first day of the trial. Collier's counsel evidently had another in-court obligation that day, however, and he chose to attend that other court hearing instead of appearing on time for the start of Collier's trial.

{¶6} Once that other court hearing concluded, Collier's counsel turned his attention to Collier's case, arriving several hours late in the courtroom where the trial judge, the prosecutor, and Collier were waiting (and where potential jurors evidently were still waiting in the wings too).

{¶7} The trial court informed Collier and his counsel that if Collier wanted to plead guilty that day, a sentencing hearing would immediately follow the plea change, and the trial court would sentence Collier appropriately after considering his prior record and the facts presented to the court that day. The record indicates that the trial judge was clearly upset with Collier's counsel for being late, and the judge advised the attorney that "[w]hen this is all done, you and I are going to have a hearing over what happened today."

{¶8} Collier did plead guilty that day to one count of felonious assault (a second-degree felony), one count of domestic violence (a fourth-degree felony), one count of criminal damaging (a first-degree misdemeanor), and one count of theft (a first-degree misdemeanor). The trial court then, as promised, imposed a sentence at the same hearing, and that sentence included a prison term for Collier as well as a restitution obligation of more than $8,000 to the victim and $371 to an ambulance company.

## The Trial Court Violated Collier's Right to Respond to Relevant Information and Evidence Provided by the Prosecution to the Trial Court at the Sentencing Hearing

{¶9}  Collier claims here that the trial court did not allow him to respond to new evidence and material facts presented by the state at the sentencing hearing.  We agree.

{¶10} At any sentencing hearing in a felony case, various persons and parties — the prosecuting attorney, any victim or victim's representative, defense counsel, and the defendant — may, under Crim.R. 32(A)(1) and R.C. 2929.19(A), present information relevant to the trial judge's sentencing decision. To be sure, that right of allocution — the right to make an unsworn statement — is not a constitutional right afforded to the defendant.  *See United States v. Richardson*, 948 F.3d 733, 744 (6th Cir. 2020) ("There is no constitutional right to allocution"); *State v. Massey*, 2007-Ohio-3637, ¶ 15 (5th Dist.) (noting that the right of allocution is "not considered a constitutional right").  Even so, the Supreme Court of Ohio has repeatedly said that trial courts must "painstakingly adhere" to the rule.  *See State v. Roberts*, 2013-Ohio-4580, ¶ 66, quoting *State v. Green*, 90 Ohio St.3d 352, 359–360 (2000) ("'A Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse'").

{¶11} In this case, the sentencing hearing initially played out just as most of them do, with the prosecutor, defense counsel, and then the defendant himself addressing the court.  After that, though, the trial court engaged in a brief additional discussion with the prosecutor.  The trial judge asked the prosecutor "how many times" Collier had "smash[ed] into the victim's car."  The prosecutor told the judge that Collier had done so twice.  "And the car was totaled?" the judge inquired.  "Yeah," the prosecutor responded, and she noted that she had some photos that the judge could examine.

{¶12}  "I'd like to take a look at the pictures," the judge told her, noting that he was tasked with imposing "the appropriate sentence."  The judge directed the prosecutor to mark the photos as exhibits, and he noted at that point in the hearing that he wanted "any reviewing Court" to be able to "see what my decision was based on."  The record suggests that the prosecutor then handed three photos to the judge, and the prosecutor said on the record that one of them showed the damage to the passenger-side door of the victim's vehicle.  Evidently looking at one or more of the photos, the judge said aloud "I dispute with defense counsel who said it's less serious.  It's very serious."

{¶13}  The trial judge then expressed concern about the violent nature of Collier's conduct and about the fact that he had been convicted in the past for other violent offenses.  And moments later, the judge imposed a sentence in the case.

{¶14}  At the first available opportunity after the judge had announced the sentence, defense counsel stated that he had hoped to "remark on the question that was posed about the ramming."  "About the what?" the judge asked.  "[H]ow many times" Collier had struck the victim's vehicle, the defense attorney explained.  "I'm not going to argue that point," the judge told him.  "I'm looking at the pictures," he added, noting that they "tell[ ] me enough."

{¶15}  The record shows that Collier and his counsel had no opportunity to address the information provided by the prosecutor about the ramming of the victim's vehicle and no opportunity to talk about the photographs that the judge himself described as exhibits on which he was basing his sentencing decision.  Of course, the judge did nothing wrong by inquiring about the criminal conduct that gave rise to the charges in the case, and certainly the judge could look at and consider the photos that the prosecutor handed to

him at the sentencing hearing. The judge went astray, though, by not giving defense counsel and Collier himself another opportunity to speak once that additional information had been presented.

{¶16} "The purpose of allocution is to allow the defendant an additional opportunity to state any further information which the judge may take into consideration when determining the sentence to be imposed." *City of Defiance v. Cannon*, 70 Ohio App.3d 821, 828 (3d Dist. 1990). Even if — as we presume — Collier and his attorney had seen the photos before the sentencing hearing, Collier had a right to speak one more time once the prosecutor had shown those exhibits to the judge. Had he been given that opportunity, Collier, together with his attorney, might have been able to provide some sort of mitigating explanation for the images in the photos, and Collier could at least have been able to express remorse one last time before the judge made a final decision on the sentence.

{¶17} So, an error occurred. What is the remedy now? "When the right of allocution is violated, the reviewing court must reverse the sentence and remand the matter for resentencing, unless the error was invited or harmless." *State v. Gutierrez*, 2021-Ohio-4232, ¶ 14 (6th Dist.), citing *State v. Yates*, 2011-Ohio-3619, ¶ 20 (2d Dist.). *See also State v. Campbell*, 90 Ohio St.3d 320 (2000), paragraph three of the syllabus (resentencing is required for a violation of Crim.R. 32(A), "unless the error is invited error or harmless error").

{¶18} Harmless error, according to Crim.R. 52(A), is "[a]ny error, defect, irregularity, or variance" that "does not affect substantial rights." "[A] trial court's failure to allow a defendant to respond to new information at sentencing constitutes harmless error

'when the defendant does not object to the new information or if the court's reasons for the enhanced sentence are unrelated.'"  *Gutierrez* at ¶ 20, quoting *Yates* at ¶ 22.

**{¶19}** We cannot say that the error in this case was harmless.  In initiating the additional discussion with the prosecutor and in encouraging the prosecutor to hand the photos to him, the trial judge remarked that he was focused on determining an "appropriate sentence" in the case.  He had the photos marked as exhibits because, he said, he would be "bas[ing]" his decision on them.  The trial judge also noted aloud that the photos affected his impression about defense counsel's earlier description of the seriousness of the felonious assault.  And even after the sentence had been announced, the judge brushed aside any concerns about having failed to give defense counsel a chance to talk about the photos, noting that the photos "tell[ ] me enough."

**{¶20}** In short, the photos and the information that the prosecutor provided to the trial judge about them and about the harm that Collier had caused was relevant to the issue of sentencing, and the trial judge's remarks indicate that he took into account those photos and the information from the prosecutor when the judge was crafting the sentence. Collier should have been given one last opportunity to speak after the judge gathered that additional information and looked at the exhibits, and the lack of that opportunity was not harmless.  A new sentencing hearing must be held.

**{¶21}** The order in which information is presented at a sentencing hearing is important, and giving the defendant the last word at that kind of hearing is always a best practice.  When trial judges have received new information at sentencing hearings and have not given defendants an opportunity to respond, other appellate courts have overturned the resulting sentences.  See, e.g., *State v. Sears*, 2023-Ohio-1925, ¶ 23 (6th

Dist.) ("the trial judge did not allow Sears an opportunity to respond to the new information before proceeding to sentence him.   Sears's Crim.R. 32(A)(1) right of allocution was, therefore, violated"); *State v. Light*, 2023-Ohio-1187, ¶ 24 (11th Dist.), quoting *State v. Brown*, 2006-Ohio-1796, ¶ 13 (11th Dist.) ("'the interest that is protected by the right to allocution is the opportunity for the defendant to address the court directly on his own behalf *after* all the information on which the sentencing court relies when pronouncing sentence has been presented'") (emphasis in original.); *State v. Fowler*, 2022-Ohio-3499, ¶ 17 (6th Dist.) ("A trial court can violate a defendant's right of allocution if it does not allow the defendant to respond after new information is introduced and considered by the court at the sentencing hearing"); *Yates*, 2011-Ohio-3619, at ¶ 21 (2d Dist.) ("A trial court errs when it does not let the defendant address new information introduced and considered by the trial court at sentencing"); *State v. Castle*, 2004-Ohio-1992, ¶ 10 (4th Dist.) ("Here, the trial court did not give Castle an opportunity to speak after evidence was introduced and considered by the trial court.   Hence, the trial court did not comply with Crim.R. 32(A)(1) and R.C. 2929.19(A)(1)").

**{¶22}**  We now join those courts in ordering a similar outcome here.

**{¶23}**  Because we conclude that Collier must be resentenced, we will not address in this appeal the two other concerns that he has raised here.   Those other issues — about the trial judge's alleged vindictiveness that Collier says resulted from his trial counsel's tardiness in arriving at the courthouse for a trial that turned into a plea-change hearing, and the error that Collier says the trial court committed by not addressing his ability to pay restitution — may or may not be claims that Collier will want to pursue in any later appeals after he is resentenced.   We express no views about those issues now.

**{¶24}** For the reasons explained above, Collier's sentence is reversed, and this case is remanded for resentencing.

By: Gormley, J.

Hoffman, P.J. and

Popham, J. concur.